STATE v. WALLACE B. DAVIS.

(Filed 15 June, 1932.)

1. **Indictment A b—Grand jury held properly constituted in this case and motion to quash indictment was properly refused.**

    Chapter 321, sec. 1, Public-Local Laws of 1919, providing that grand juries for Buncombe County should be drawn in July and January of each year for the fall and spring terms of that county and that no other grand juries should be drawn, is in full force and effect, C. S., 8106 (1919), not repealing the local statute either expressly or by implication, and a motion, aptly made, to quash indictments on the ground that the grand jury was not properly constituted, in that the indictment was returned by the grand jury at terms of court subsequent to the term at which it was drawn, is properly refused.

2. **Statutes C b—Repeal of statutes by implication is not favored.**

    The repeal of a statute by implication is not favored by the law, and a later statute will not be construed as repealing a former statute unless the repugnancy between them is irreconcilable.

3. **Indictment A d—Motion to quash on ground that there was no evidence at hearing before grand jury held properly denied.**

    It is not error for the trial judge to permit the foreman of the grand jury, at his request, to indicate by a cross-mark against the name of the

witness endorsed on the indictment that the witness had been sworn and examined before the grand jury, and where the indictment as returned and entered upon the records shows that there was evidence at the hearing by the grand jury, and the defendant offers no evidence to the contrary, his motion to quash on the grounds that there was no evidence presented in the hearing before the grand jury is properly denied.

**4. Indictment O b — Motion to quash indictment for duplicity held properly denied in this case.**

In a prosecution for making and publishing false reports of the condition of a bank in violation of N. C. Code, 1931, sec. 224(e), an indictment which charges the offenses in the language of the' statute is not bad for duplicity, and where it charges the offense in a plain, intelligent and explicit manner it is sufficient. C. S., 4623.

**5. Criminal Law L d—Exceptions relating to count on which defendant was acquitted are improperly included in the record on appeal.**

Where the defendant has been acquitted on one count in the bill of indictment, exceptions relating thereto are improperly included in the case on appeal, and will not be considered except in so far as they relate to the count upon which the defendant was convicted.

**6. Banks and Banking I d—Proof that item of bank statement was false and published with knowledge and unlawful intent is sufficient.**

In a prosecution of an officer of a bank for publishing a false report of the bank's condition in violation of N. C. Code, 1931, sec. 224(e), a variance between the allegations and proof as to some of the items of the report will not be fatal when there is no variance with respect to all the items, it being sufficient for conviction if the report as published was false in any particular as alleged in the indictment and was published with knowledge of such falsity and with a wrongful or unlawful intent, and *held further,* there was no error in the trial on the count relating to the publishing of such false report and the conviction of the defendant on that count is upheld on appeal.

**7. Same—Bank officer verifying report must do so upon his own knowledge and not upon statements of other employees.**

The verification of a report of the condition of a bank made by certain officers or directors to the Corporation Commission in response to an official call is required to be made upon the knowledge of those signing the report and not merely upon the statements by other employees of the bank, and in a prosecution for publishing a false report in a newspaper a defendant bank official who had verified the report may not escape criminal liability upon the grounds that he was busily engaged with other matters of the bank's business at the time of signing it and relied upon the assertions made to him by other employees as to its correctness, and signed it without knowledge of its falsity.

BROGDEN, J., dissenting.  CLARKSON, J., concurring.

APPEAL by defendant from *Barnhill, J.,* at April Special Term, 1931, of BUNCOMBE. No error.

The defendant, Wallace B. Davis, the president, and J. A. Sinclair and C. N. Brown, directors of the Central Bank and Trust Company, of Asheville, N. C., were tried at April Special Term, 1931, of the Superior Court of Buncombe County, on indictment for violations of the banking laws of this State. The indictments were returned at March Term, 1931, and April Term, 1931, of said court, respectively. Each indictment contains two counts, which are substantially identical, respectively, in words and in legal effect. The indictments were consolidated by order of the trial court. The defendants were tried on their plea of "not guilty," to the consolidated indictment.

In the first count in the consolidated indictment, it is charged that defendants "being officers and/or directors of the Central Bank and Trust Company, a banking corporation organized and existing under the banking laws of the State of North Carolina, with its banking house at Asheville, N. C., and at said date receiving deposits of money, with force and arms at and in said county and State, with intent to defraud or injure said bank and with the intent and purpose to deceive the Corporation Commission of North Carolina, its examiners and agents appointed to examine the affairs of said bank, and other corporations and persons dealing with said bank, with respect to the true financial condition of said bank, on or about 18 October, 1930, unlawfully, wilfully, knowingly, fraudulently and feloniously, in response to an official call from said Corporation Commission of North Carolina, for a report of the condition of said bank as of 24 September, 1930, did make (and knowingly permit to be made) a false report to said Corporation Commission of North Carolina, with respect to the financial condition of the aforesaid bank, and did knowingly, falsely, fraudulently and feloniously report to said Corporation Commission of North Carolina that the overdrafts of said bank on 24 September, 1930, amounted to $71,704.92, when in truth and in fact the said overdrafts on said date amounted to $181,840.68, and did also on said date falsely, knowingly, fraudulently and feloniously report to the said Corporation Commission of North Carolina that the deposits due public officials on said 24 September, 1930, were $5,432,039.69, when in truth and in fact the deposits due public officials on said 24 September, 1930, were $7,294,352.98; and did further on said date knowingly, falsely, fraudulently and feloniously report to the said Corporation Commission of North Carolina that the amount due from approved depository banks on the said 24 September, 1930, was $2,325,382.99, when in truth and in fact the correct amount due from approved depository banks on said date was $153,684.10, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

In the second count in the consolidated indictment, it is charged that the said defendants, "being officers and/or directors of the Central Bank and Trust Company, a banking corporation organized under the laws of the State of North Carolina, with its banking house at Asheville, N. C., and on said date receiving deposits of money, with force and arms at and in the said county and State, with intent to defraud or injure said bank and with the intent and purpose to deceive the Corporation Commission of North Carolina, its examiners and agents appointed to examine the affairs of said bank and other persons and corporations dealing with said bank, on or about 18 October, 1930, unlawfully, wilfully, knowingly, fraudulently and feloniously did make, utter and publish (and knowingly permit to be made, uttered and published) in the *Asheville Times,* a newspaper published in the aforesaid county of Buncombe, a false report and statement with respect to the financial condition of the aforesaid bank as of 24 September, 1930, which said false statement so published as aforesaid was to the effect that the overdrafts in said bank on the said 24 September, 1930, amounted to $71,704.92, when in truth and in fact said overdrafts on the said date amounted to $181,-840.68; that the deposits due public officials on 24 September, 1930, were $5,432,039.69, when in truth and in fact deposits due public officials on said date were $7,294,352.90; that the amount due said bank from approved depository banks on the said 24 September, 1930, was $2,325,382.99, when in truth and in fact the correct amount due on said date from approved depository banks was $153,684.10, and (that the amount of deposits subject to check, for which the said bank was liable was $5,382,672.77, when in truth and in fact said amount was $2,037,-909.89), contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

Certain items with respect to which it was charged in the indictment that the reports made to the Corporation Commission, and published in the *Asheville Times,* respectively, were false and fraudulent were eliminated from the consideration of the jury, as the result of rulings made by the court, on motions of defendants, during the progress of the trial.

The verdict returned by the jury was as follows:

"Not guilty, as to defendants, J. A. Sinclair and C. N. Brown; not guilty as to defendant, Wallace B. Davis, on the first count, but guilty on the second count."

The record shows that on the return of the verdict, questions were addressed to the jury by the court and answered as follows:

"Q. That is, guilty of unlawfully making, uttering and publishing a false report and statement with respect to the financial condition of the bank, with the intent as specified and charged in the second count? A. Yes, sir.

Q. Is this your verdict? A. Yes, sir.

Q. So say you all? A. Yes, sir."

The verdict was thereupon recorded as returned by the jury.

From judgment that the defendant, Wallace B. Davis, be confined in the State's prison for a term of not less than five or more than seven years, the said defendant appealed to the Supreme Court.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*R. R. Williams, A. Hall Johnston and Geo. M. Pritchard for defendant.*

CONNOR, J. The defendant, Wallace B. Davis, before pleading to the indictments which were thereafter consolidated by order of the court, as authorized by statute (C. S., 4622), challenged their legal sufficiency by motions to quash. These motions were made in apt time (*S. v. Barkley,* 198 N. C., 349, 151 S. E., 733, and *S. v. Paramore,* 146 N. C., 604, 60 S. E., 502), and properly presented to the court defendant's contention that the indictments were not legally sufficient (1) because neither of the indictments was returned by a duly constituted grand jury; (2) because no evidence was presented to the grand jury at the hearing of the bills of indictment which were returned as "true bills"; and (3) because the counts in both indictments were bad for duplicity. The motions to quash were denied, and defendant duly excepted. On his appeal to this Court, defendant contends that there was error in the denial of his motions to quash the indictments. These contentions cannot be sustained.

The question presented by defendant's first motion to quash is whether the grand jury which was duly drawn, sworn, and empaneled at the January Term, 1931, of the Superior Court of Buncombe County, was a duly constituted grand jury at the March Term, 1931, and at the April Term, 1931, of said court. The indictments show on their face that they were returned by the grand jury at these terms, respectively. It was admitted that no grand jury was drawn, sworn or empaneled at either of said terms, and that both the indictments were returned at said terms by the grand jury which was drawn, sworn and empaneled at January Term, 1931.

It is provided by section 1 of chapter 321 of the Public-Local Laws of North Carolina, 1919, that "the grand juries drawn in the Superior

Court for the county of Buncombe in July and January of each and every year hereafter shall be and constitute the grand jury for each and every term of the Superior Courts where a grand jury is authorized by the law for the fall and spring terms held in said county, and no other grand jury shall be drawn during said fall and spring terms." This public-local statute, applicable by its terms only to Buncombe County, was ratified on 4 March, 1919, and became effective from and after its ratification. The statute has not been repealed or modified, and is now in full force and effect. The contention that the statute was repealed by section 8106 of the Consolidated Statutes of North Carolina, 1919, cannot be sustained. The language of said section does not show expressly or by necessary implication, that it was the intention of the General Assembly to repeal the statute. It shows the contrary. Repeals by implication are not favored by the law, and it is the policy of the courts to avoid such construction unless repugnancy between a subsequent statute and one of prior date be irreconcilable. *Lumber Co. v. Welch,* 197 N. C., 249, 148 S. E., 250.

There was no error in the action of the court in permitting the foreman of the grand jury, at his request, after the return of the indictment at April Term, 1931, to indicate by a cross-mark against the name of the witness endorsed on the indictment that said witness had been sworn and examined before the grand jury. *S. v. Avant,* 202 N. C., 680. The indictment as returned and entered upon the records of the court showed that there was evidence at the hearing of the bill by the grand jury, upon which the bill was returned as a "true bill." Defendant offered no evidence to the contrary, nor did he contend that the witness whose testimony was received by the grand jury as evidence was disqualified. *S. v. Sultan,* 142 N. C., 569, 54 S. E., 841; *S. v. Levy,* 200 N. C., 586, 158 S. E., 94.

The crime charged in the second count of the consolidated indictment upon which the defendant was convicted, is defined by statute. N. C. Code, 1931, sec. 224(e). The language of these counts is the language of the statute. For this reason the indictments are not bad for duplicity. *S. v. Leeper,* 146 N. C., 655, 61 S. E., 585. The charge against the defendant which he was required to answer by plea, was stated in a plain, intelligible and explicit manner. This was sufficient under the statute. C. S., 4623.

The issue between the State and the defendant involving the guilt or innocence of the defendant of the crimes charged in the indictment, was properly raised by defendant's plea of "not guilty," after his motions to quash, and his motions addressed to the discretion of the court, had been denied. This issue was submitted to the jury upon evidence which

STATE *v.* DAVIS.

tended to sustain the contention of the State that defendant is guilty on both counts contained in the consolidated indictment. The jury acquitted the defendant of the charge made in the first count, and convicted him of the charge made in the second count. Exceptions by the defendant to the admission of evidence and to instructions of the court to the jury, pertinent only to the trial on the first count, were improperly included in the case on appeal, and have not been considered on this appeal except in so far as they are directed to matters which have some relevancy to the trial of the charge contained in the second count. These exceptions, when thus considered, and the exceptions which are directly pertinent to matters involved in the trial of the charge contained in the second count, are overruled. It is needless to discuss them. We find no error in the trial for which the defendant is entitled to a reversal of the judgment, or to a new trial. There was evidence, competent and admitted without objection, tending to show that the defendant, with a wrongful and unlawful intent, published and permitted to be published in the *Asheville Times* a false and fraudulent statement of the financial condition of the Central Bank and Trust Company, of which he was president. This under the law of this State is a felony. Conceding but not deciding that there was a variance between the allegations in the indictment and the proof, with respect to some of the items as alleged in the second count of the indictment, such variance was not fatal, for the reason that there was no variance between the allegations in the indictment and the proof with respect to all the items. The court correctly instructed the jury that if they should find beyond a reasonable doubt that the statement of the financial condition of the bank as published in the *Asheville Times* by the defendants, was to their knowledge false in any particular as alleged in the indictment, and was published with a wrongful and unlawful intent, as the court had instructed the jury, they should return a verdict of guilty on the second count; otherwise, not guilty.

The defendant as a witness in his own behalf testified as follows, with respect to the reports made by him to the Corporation Commission and published in the *Asheville Times:*

"That is my signature on the report referred to in this trial as Exhibit P-86. The first time I ever saw that report was on the morning of 17 October, 1930. I saw it and heard it read in the directors' room in the bank. I went from my office to the bank not knowing that the report was coming up at that time. I went in and sat down. I noticed that they were reading the report. I was called out to answer a telephone call. When I returned, the report had been read, and turned over to the secretary of the committee. That is the first time I ever

saw the report. I hardly read the report at all. I just barely said good morning to the gentlemen in the room when I entered. I was called out, and did not know that Dr. Sinclair and Mr. Brown had signed the report. I never at any time discussed the report with either of them. Neither was present when I signed the report. The next time I saw the report was on the morning of 18 October. Mr. McCants brought it to me on the morning of the 18th and apologized for bringing it to me. He said Mr. Bradford, the cashier, was not available, and that they had to get the report published in the *Asheville Times,* as the Corporation Commission had wired from Raleigh, jacking us up for not filing and publishing the report. I said to Mr. McCants, 'Give it to me, and let me sign it.' I signed the report and handed it back to him. I did not read one item of the report. I was busy. I relied on Mr. McCants, the auditor of the bank."

Attached to the report as published in the *Asheville Times* is an affidavit signed by the defendant, in which he says under oath, that the report is true to the best of his knowledge and belief.

The defendant's testimony, as a witness in his own behalf, shows at least that he did not know whether the report which he verified by his oath was true or not; that all that he knew was that an employee of the bank stated to him that it was a true report of the financial condition of the bank as of 24 September, 1930, as shown by its records. The statute requires that reports made by a bank to the Corporation Commission of its financial condition, in response to official calls, shall be verified by the oath of its president, vice-president, cashier, secretary or treasurer, and in addition thereto by the oaths of two directors, and that summaries of such reports, so verified, shall be published in a newspaper published in the place where the bank is located. Section 64, chap. 4, Public Laws of North Carolina, 1921, as amended. N. C. Code of 1931, sec. 222(b). The statute clearly contemplates that the officer of the bank who verifies the report shall do so upon his own knowledge, and not merely upon a statement made to him by an employee of the bank, that the report is true according to the records of the bank made by other employees. In the instant case, there was evidence tending to show that the records of the bank were false, not only to the knowledge of the defendant, but also because of his express directions to employees of the bank to that effect.

There was no error in the trial of this action, resulting in the conviction of the defendant on the second count. He does not complain, of course, that the jury acquitted him on the first count. The judgment is supported by the verdict of guilty on the second count and is affirmed.

No error.

STATE *v.* DAVIS.

BROGDEN, J., dissenting: C. S., 222(b) requires the proper officers of a bank to file a report with the Corporation Commission on a form prescribed by the Commission, showing "under appropriate heads the resources, assets and liabilities of such bank" and "in a form prescribed by said Corporation Commission a summary of such report shall be published in a newspaper." Thus, it is to be observed that the statute does not require two reports, one for the Corporation Commission and the other for a newspaper, but only one report. The "summary" to be published in a newspaper is the same report that is made to the Corporation Commission. Obviously a false statement or report cannot be published in a newspaper unless and until a false statement or report has been made.

The defendant was indicted upon two counts, one for making a false statement or report with intent to deceive the Corporation Commission and other corporations and persons dealing with the bank, the other for publishing in a newspaper in Asheville a false report for the purpose of deceiving the identical parties named in the first count. The jury said by its verdict that the defendant was not guilty upon the first count but guilty upon the second count. In other words, the verdict declared that the defendant had not made a false report to the Corporation Commission, but that when the "summary" of said report had been published in a newspaper, he was guilty of a felony. To state the proposition baldly, the publication of a true report lands the defendant in the penitentiary for a substantial period of time.

The verdict was wholly at variance and expressly contrary to the following instruction of the trial judge: "If you should find the defendant not guilty as to the making of said report, in the way and manner charged in the bill of indictment, then, they would not be guilty of publishing or permitting it to be published for they would have no knowledge of its falsity." That is to say, the judge expressly and unequivocally charged the jury that if the defendant should be found not guilty on the first count, he would therefore not be guilty on the second count. It is true that in subsequent instructions to the jury a different and contrary charge was given. Which of the conflicting and antagonistic instructions did the jury follow in its deliberations? If they followed the first instruction above quoted, it was the duty of the trial judge to discharge the defendant upon the rendition of the verdict of not guilty on the first count. If they followed subsequent instructions, the verdict can be upheld. However, this position does not help the State for the reason that this Court has held in an unbroken line of decisions that a jury is not required to steer a boat through the troubled

waters of conflicting and contrary instructions, or to lapse into the language of theology: "to separate the sheep from the goats."

The case has been thoroughly debated and considered, and it would serve no useful purpose to draw out the discussion, but I am still wondering how it comes about that a citizen can be sent to the penitentiary for causing to be published in a newspaper in Asheville a false report that was never made or become a felon for publishing in a newspaper a report which a jury has found by its verdict to be true, after a long and tedious trial.

CLARKSON, J., concurring: I concur in the able opinion of *Mr. Justice Connor.* In answer to the material part of the dissenting opinion of *Mr. Justice Brogden,* I may say that this matter has recently been discussed by the Supreme Court of the United States by *Mr. Justice Holmes* in *Dunn v. U. S.,* 52 Sup. Ct., 189. In that opinion *Mr. Holmes* declared that "Consistency in the verdict is not necessary. Each count is an indictment, he said, in regard as if it were a separate indictment. If separate indictments had been presented against the defendant for possession, for sale, and for maintenance of a nuisance and had been separately tried, the same evidence being offered in support of each, an acquittal on one could not be pleaded as *res judicata.* Where the offenses are separately charged in the counts of a single indictment, it was said, the same rule must hold, nor can it be inferred that the jury was not convinced of the defendant's guilt, because it reached different verdicts on different counts. That the verdict may have been the result of compromise or a mistake on the part of the jury, said *Mr. Holmes,* was possible. But, he held, nevertheless, that verdicts cannot be upset by speculation or conjecture, or inquiry into matters of the character described." United States Law Review, April, 1932, p. 215; *S. v. Sisk,* 185 N. C., 696.