CALABRIA, Judge.
Where defendant raised arguments on his motion for judgment notwithstanding the verdict which were not raised on his motion for directed verdict, the trial court did not err by disregarding those arguments, and did not err by denying defendant's motion for judgment notwithstanding the verdict. Where defendant failed to show that the jury's verdict was mutually exclusive or the result of jury compromise, the trial court properly denied defendant's motion for new trial.
I. Factual and Procedural Background
On 19 May 2014, Imer Rodriguez Cabrera ("Cabrera") and Douglas Ramos Ortiz ("Ortiz") (collectively, "plaintiffs") filed a complaint against Andrew W. Lawson III ("Lawson"), Terry M. Tanner ("Tanner"), Brock E. Chambers ("Chambers"), and M.D. Evans ("Evans") ("defendant officers"), both individually and in their official capacities as officers of the Durham Police Department, and the City of Durham itself (collectively, "defendants"). Plaintiffs alleged that, on 23 May 2011, they were passengers in a vehicle that struck a utility pole. The driver fled the scene, and plaintiffs waited for law enforcement to arrive. Plaintiffs' complaint includes the details of the injuries they sustained at the hands of defendant officers, and Tanner's police dog ("K-9") escort, as well as defendant officers' purported conduct. Specifically, according to the allegations in the complaint, Tanner released his K-9, which attacked Cabrera, and Chambers applied pepper spray to Ortiz after the latter had already been secured in the back of a police vehicle. Plaintiffs' claims included negligence, based on inadequate training of the K-9 and excessive force on behalf of defendant officers; assault and battery, resulting from the same; false imprisonment, resulting from defendant officers' seizure of plaintiffs; malicious prosecution under state law, based on charges brought by defendants and ultimately dismissed; violations of the North Carolina Constitution, based on the allegation that the City of Durham deprived plaintiffs of their rights; excessive force, unreasonable seizure, and malicious prosecution, pursuant to 42 U.S.C. § 1983, based on the above; standby officer's failure to intervene, based upon defendant officers' failure to prevent one another's conduct; and deprivation of due process, based upon defendants' "reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights."
On 8 October 2014, defendant officers filed their answer and motion to dismiss. In their answer, defendant officers alleged that plaintiffs' claims for negligence and "all claims against the Police Officer Defendants in their official capacities" should be dismissed for failure to state a claim, and further that any claims against both the City of Durham and defendant officers were redundant and should be dismissed; defendant officers also raised the defenses of qualified immunity by public officials against claims under the United States and North Carolina Constitutions, the public duty doctrine, failure to mitigate damages, contributory negligence, immunity to punitive damages, and the statute of limitations.
On 14 May 2015, the trial court ruled on defendants' motion for partial summary judgment.[1] The trial court granted summary judgment with respect to Lawson, Evans, and the City of Durham with respect to certain claims by plaintiffs. The trial court denied summary judgment with respect to the remainder of plaintiffs' claims.
The matter proceeded to trial on 22 September 2015, Judge Paul G. Gessner presiding. At the close of plaintiffs' evidence, defendants moved for a directed verdict on all claims, on the grounds that "it can't stand in the light most favorable to the plaintiff, it fails to make out a substantial claim and take the case to the jury." Specifically, defendants contended that not all defendants were involved in all of plaintiffs' claims, and that therefore numerous claims should be dismissed with respect to each defendant. Counsel argued that "basically we're seeking the dismissal of everything but the assault & battery claims by Officer Tanner against Rodriguez, the assault & battery claims by Officer Chambers as to Ortiz, and the 1983 excessive force claims by-against Tanner by Rodriguez, the 1983 excessive force claims by-against Chambers by Ortiz." Plaintiffs' counsel conceded that they were willing to dismiss certain claims, and proceeded to present a list to the court of those claims which they would voluntarily dismiss. After extensive review, the claims which survived colloquy were (1) Cabrera's negligence claim against Tanner, for failure to control his K-9; (2) Ortiz' negligence claim against Chambers, for misuse of pepper spray; (3) Cabrera's assault and battery claim against Tanner; (4) Ortiz' assault and battery claim against Chambers; (5) plaintiffs' malicious prosecution claims against Chambers and Evans; (6) Cabrera's excessive force claim against Tanner; and (7) Ortiz' excessive force claim against Chambers.
At the close of all the evidence, defendants renewed their motion for directed verdict with respect to the surviving claims. The trial court dismissed plaintiffs' claims for negligence and for malicious prosecution. However, the trial court allowed the claims for assault and battery and excessive force to proceed. Prior to submitting these claims to the jury, plaintiffs voluntarily dismissed the assault and battery claims. Therefore, the only surviving claims were the excessive force claims by Cabrera against Tanner, and Ortiz against Chambers.
The claims were submitted to the jury, and on 29 September 2015, the jury returned a verdict finding that Chambers violated Ortiz' constitutional rights by the use of excessive force, and that Ortiz was entitled to $1 in compensatory damages. The jury was unable to reach a unanimous verdict with respect to Cabrera's claims against Tanner. On 8 October 2015, Chambers filed a motion for judgment notwithstanding the verdict ("JNOV"), or alternatively for new trial, alleging that the jury's verdict was inconsistent. Specifically, Chambers alleged that the jury's verdict was "to the effect that Defendant Chambers exercised excessive force but that Plaintiff Douglas Ortiz sustained no compensable damages. The verdict indicates that Plaintiff Ortiz suffered only a de minimis injury, which as a matter of law cannot support a claim of excessive force." Chambers further alleged that he was entitled to qualified immunity as a matter of law.
The trial court entered a written judgment upon the jury's verdict on 15 December 2015. That same day, the trial court entered an order denying Chambers' alternative motions for JNOV and new trial.
Defendant officers subsequently filed a motion to amend the judgment.[2] On 2 August 2016, the trial court, Judge Michael J. O'Foghludha presiding, entered an order granting the motion, and ordering that the original judgment be amended to reflect the status of the claims not resolved by the jury. The trial court then entered an amended judgment, reflecting the fact that numerous charges were dismissed. This amended judgment retained the verdict and judgment against Chambers.
From the judgment as amended and the order denying his alternative motions for JNOV and new trial, Chambers appeals.
II. Judgment Notwithstanding the Verdict
In his first argument, Chambers contends that the trial court erred in denying his motion for JNOV. We disagree.
A. Standard of Review
"On appeal the standard of review for a JNOV is the same as that for a directed verdict, that is whether the evidence was sufficient to go to the jury." Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc., 136 N.C. App. 493, 498-99, 524 S.E.2d 591, 595 (2000).
B. Analysis
In his written motion, Chambers cited two grounds for JNOV. First, Chambers contended that "[t]he jury's finding of nominal damages established that any force used against Plaintiff Ortiz was de minimis[,]" and that, to support a claim for excessive force under § 1983, a plaintiff's injuries must be more than de minimis. Second, Chambers contended that, even if Ortiz suffered more than de minimis injuries, Chambers enjoyed qualified immunity as a matter of law, based on his contention that "the use of pepper spray as a way of achieving compliance in lieu of greater physical force is a reasonable decision and a reasonable amount of force by Defendant Chambers in the circumstances he found himself in." Chambers raised similar arguments at the hearing on his motion for JNOV.
As a preliminary matter, we note that "[a] movant cannot assert grounds on a motion for JNOV that were not previously raised in the directed verdict motion." Munie v. Tangle Oaks Corp., 109 N.C. App. 336, 342, 427 S.E.2d 149, 152 (1993). During the initial colloquy on defendants' motion for directed verdict, made at the close of plaintiffs' evidence, the following exchange occurred:
THE COURT: And the excessive force claim-so there's, I guess, four excessive force claims under 1983. Each of them are-well, there's Ortiz versus Lawson, Ortiz versus Chambers-is that right?-and Cabrera versus Lawson and Cabrera versus Tanner. Is that my understanding?
Do you wish to be heard?
[DEFENSE COUNSEL]: Just very briefly, Your Honor.
I think excessive force actually would require evidence of a use of force. And since there's no actual evidence of Lawson using any force, and the supervisory theory that if your subordinate uses-or junior officer uses force, you are potentially subject to liability for 1983 excessive force, I don't think has any basis in the case law.
At the close of all the evidence, defendants renewed their motion for directed verdict and "reiterate[d] the grounds previously tendered in support of" that motion. Although both sides then gave additional arguments with respect to several claims, defendants offered no arguments with respect to the excessive force claim against Chambers. Because Chambers' arguments on JNOV with respect to nominal damages and qualified immunity were not raised in defendants' motion for directed verdict, they could not be properly asserted on JNOV.
Despite this, defense counsel asserted at the JNOV hearing that "[q]ualified immunity can be considered after the jury verdict." Counsel cited Alford v. Cumberland Cty., in which the Fourth Circuit observed that "[q]ualified immunity can also be applied after trial." Alford v. Cumberland Cty., 2007 WL 2985297, at *3, fn. 7 (4th Cir. Oct. 15, 2007) (unpublished). However, Chambers cites no authority which would permit him to raise this argument via post-trial motion for JNOV when he failed to raise it on directed verdict. Likewise, on appeal, Chambers offers no basis which would permit him to raise arguments on JNOV which he did not raise on directed verdict.
Notwithstanding any merit his arguments may have had, therefore, it is clear that Chambers was precluded from making them at JNOV. We hold that the trial court did not err in disregarding them, and did not err in denying Chambers' motion for JNOV.
III. New Trial
In his second argument, Chambers contends that the trial court erred in denying his motion for a new trial. We disagree.
A. Standard of Review
"[A]n appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge." Worthington v. Bynum, 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982).
"A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason ... [or] upon a showing that [the trial court's decision] was so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
B. Analysis
The jury returned a verdict finding that Chambers had engaged in the use of excessive force, but that Ortiz' damages were limited to nominal damages of $1. Chambers contends that this is evidence that the jury verdict was inconsistent, and likely the result of compromise.
Our Supreme Court has held that, although the decision to grant or deny a motion for new trial generally rests in the sound discretion of the trial court, that rule does not apply where "the verdict is contrary to law, inconsistent, invalid and should have been set aside ex mero motu." Robertson v. Stanley, 285 N.C. 561, 564, 206 S.E.2d 190, 192 (1974). In Robertson, a minor was struck by a vehicle at a drive-in movie. The minor filed an action against the driver to recover for his injuries, and his father also filed an action against the driver to recover for the medical expenses he incurred paying for his son's treatment. The jury returned a verdict finding the defendant liable for the damages. According to the jury's verdict, the father was entitled to full compensation for medical expenses, but the son was not entitled to any compensation for his injuries. The minor plaintiff appealed the denial of his motion for new trial. On appeal, our Supreme Court held "that the verdict in this case is contrary to the instructions of the trial court, is inconsistent, and therefore improper and invalid. The trial judge on his own motion should have set the verdict aside and ordered a new trial on all issues." Id. at 568, 206 S.E.2d at 195. The Court further noted that a partial new trial, on damages alone, was insufficient:
Where it appears that the verdict was the result of a compromise, such error taints the entire verdict and requires a new trial as to all of the issues in the case. If the award of damages to the plaintiff is 'grossly inadequate,' so as to indicate that the jury was actuated by bias or prejudice, or that the verdict was a compromise, the court must set aside the verdict in its entirety and award a new trial on all issues.
Id. at 569, 206 S.E.2d at 195-96 (citation and quotation marks omitted).
In the instant case, Chambers contends that the jury's determination that Chambers used excessive force against Ortiz was inconsistent with its determination that Ortiz was entitled to only nominal damages. Chambers contends that the jury must either have wholly believed Ortiz, and therefore awarded him actual damages, or wholly believed Chambers that no injury occurred. Chambers contends that this is evidence of jury compromise, and that, pursuant to Robertson and cases like it, he is entitled to a new trial. Chambers contends that the trial court's failure to grant him a new trial was error.
Chambers had adequate opportunity to influence the instructions the trial court gave to the jury, however. At the jury charge conference, plaintiffs' counsel sought to have the jury instructed on the excessive force claim pursuant to N.C.P.I. 804.00, which deals with excessive force claims pursuant to § 1983. When asked whether defendants had any objections to this instruction, counsel responded:
I think the Pattern Instruction in the state book is an adequate statement of the law. What we had presented to the Court comes from a federal Pattern Instruction book that we've had access to. Frankly, it seems to me that what Your Honor has from the state's superior court judges' conference is sufficient and I don't really have any objection to it.
The trial court then asked if defendants had any additions or deletions, to which counsel responded that the instruction should make clear that the excessive force should be "in connection with an arrest." Counsel otherwise assented to the instruction.
On the claim of excessive force, the trial court instructed the jury as agreed by the parties. Its instructions substantially tracked N.C.P.I. 804.00. Nowhere in the Pattern Instructions, nor in the instructions given by the trial court, was there a requirement that the jury find substantial injury beyond merely de minimis harm to Ortiz. The only requirement was that Ortiz "must show that Defendant Chambers's [sic] use of force proximately caused his injury[.]"
The trial court also instructed the jury with respect to damages. Again, although there was some disagreement between the parties on what sorts of damages should be discussed, defendants raised no objection to the trial court's use of N.C.P.I. 810.00, governing personal injury damages generally and the burden of proof. The trial court instructed the jury accordingly, charging that, "[i]f you have answered 'Yes' to Issue 2 in favor of the plaintiff, Douglas Ortiz, then Douglas Ortiz is entitled to recover nominal damages even without proof of actual damages." The instruction further noted that, if the jury failed to find an amount of actual damages, "then it would be your duty to write a nominal sum, such as $1, in the blank space that's provided."
These instructions are not mutually exclusive. A jury, following the trial court's instructions, could find that Ortiz suffered some "technical injury" proximately caused by Chambers' excessive use of force, but that Ortiz had failed to demonstrate the numerical value of any actual damages beyond that. The jury could have found the use of excessive force, but, failing to find actual damages, could have written "a nominal sum, such as $1," and have followed the trial court's instructions-instructions with which, it bears repeating, defendants found no issue.
Chambers contends that there was further evidence of jury compromise. He points to the fact that the jury deliberated over a period of three days, that it was deadlocked more than five times, and that the jury asked to review police department policies regarding the use of force, among other facts. These factual arguments, however, amount to mere conjecture, and "verdicts cannot be upset by speculation or conjecture, or inquiry into matters of the character described." State v. Davis, 203 N.C. 47, 164 S.E. 732, 736 (1932) (Clarkson, J., concurring) (citation and quotation marks omitted).
Nonetheless, it is clear that the jury followed the instructions of the trial court, and that its findings were not mutually exclusive. And while our courts have held that mutually exclusive verdicts may give rise to a new trial, our Supreme Court has repeatedly held that "mere inconsistency will not invalidate the verdict." State v. Mumford, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010) (quoting State v. Davis, 214 N.C. 787, 794, 1 S.E.2d 104, 108 (1939) ). Even if Chambers is correct, and these verdicts were inconsistent, they were not mutually exclusive; their inconsistency alone is not proof of jury compromise, and not grounds to invalidate the jury's verdict.
We hold that Chambers has failed to demonstrate that the jury's verdict was mutually exclusive or the result of compromise, and therefore that the trial court did not err in denying Chambers' motion for new trial.
NO ERROR.
Report per Rule 30(e).
Judges DAVIS and TYSON concur.

The motion itself is absent from the record. However, as Chambers does not appeal this order, that point is moot.

The motion itself is absent from the record. However, as Chambers does not appeal the amendments to the original judgment, any argument with respect to the motion to amend is not properly before us.